UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STAFFORD BROUMAND, M.D.,

                                Petitioner,

      -and-

JEREMY JOSEPH et al.

                                Respondents.

Case No. 1:20-cv-09137 (JSR)


**PETITIONER'S MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION**


**KIRSCH & NIEHAUS PLLC**

**Emily Bab Kirsch**
150 East 58th Street, 22nd Floor
New York, NY 10155
**O:** 212-832-0170
**M:** 917-744-2888
Emily.kirsch@kirschniehaus.com

Petitioner Stafford Broumand, M.D., through his undersigned counsel, respectfully submits this memorandum of law in opposition to the motions of Respondents Sean Gabriel and Jeremy Joseph to dismiss the Petition to compel compliance with arbitrator's subpoenas for lack of personal jurisdiction. Petitioner respectfully requests that the motions be denied, and that this Court issue an order compelling compliance with the subpoenas, modified to permit the witnesses' appearance by videoconference in light of the COVID-19 pandemic. In the alternative, should the Court decline to exercise personal jurisdiction over the Respondents, Petitioner requests an opportunity to ask the Court to issue letters rogatory, or by some other process ask sister courts in the districts where Respondents reside to enforce compliance with the subpoenas.

## RELEVANT FACTS

This proceeding arises from an arbitration between Petitioner, on the one hand, and certain individuals and entities, on the other, before the American Arbitration Association titled In the Matter of the Arbitration Between Stafford Broumand, M.D., and Michael Abbott, et al., AAA Case No. 01-19-0003-3836 (the "Arbitration"). *Pet. ¶10.* In the Arbitration, Petitioner alleges, among other things, that the misappropriation of assets, know-how and corporate opportunities of a medical marijuana startup called VentureForth Holdings, LLC ("VentureForth"), constitutes breaches of fiduciary duties and contract by two individuals, Michael Abbott ("Abbott") and Nicholas Vita ("Vita"), both New York residents. *Pet. ¶11; Kirsch Decl. ¶2.* Columbia Care, LLC ("Columbia Care"), which has its principal place of business in New York, is alleged to have aided and abetted the wrongdoing and to have been unjustly enriched thereby. VentureForth

1

Holdings and Columbia Care are and were, at all relevant times, under the exclusive control of Abbott and Vita. *Kirsch Decl. ¶2*.

The Arbitration is venued in New York, New York.[1] *Id. ¶3*. It arises under two relevant arbitration agreements, found in the Operating Agreements of VentureForth and Columbia Care. (*Kirsch Decl. Exhs. A and B). Id. ¶4*. Each of the arbitration agreements independently covers all the claims in the Arbitration.

Respondent Sean Gabriel is a party to both of the governing arbitration agreements. *Kirsch Decl. ¶4*. Mr. Gabriel is a founder, creditor, manager, and the sole holder of all the Class B equity of VentureForth. *Kirsch Decl. ¶5*. He has had these ties to VentureForth at all times relating to the allegations in the Arbitration, and holds every one of those positions today. *Id.*

Moreover, Mr. Gabriel is also credited as a founder of Columbia Care and a significant shareholder since inception. *Kirsch Decl. ¶6*. As such, he is also party to Columbia Care's Operating Agreement. *Id.* In the Columbia Care arbitration agreement, Mr. Gabriel agreed to submit to arbitration in all disputes relating to members, managers, and Columbia Care to be held at a place in New York, New York. *Id.; Kirsch Decl. Exh. B §13.8*. Mr. Gabriel could have properly been named as a Respondent in this Arbitration and been subject to the entirety of the proceedings in New York, New York.

Respondent Jeremy Joseph was the founder, CEO and controlling shareholder of VentureForth, LLC (the predecessor of Respondent VentureForth, a nominal respondent in the underlying Arbitration). *Kirsch Decl. ¶7; Joseph Decl. ¶2; See also Kirsch Decl. Exh. A*. Mr. Joseph was a signatory to one of the two arbitration agreements that govern the Arbitration. *Id.*

---

[1] Both the AAA Administrators and the Arbitrator have affirmed that the Arbitration is properly sited in New York.

More specifically, Mr. Joseph sought, heavily negotiated, and ultimately obtained a $2.2 million investment from Abbott and Vita, both of whom are New York residents and respondents in the Arbitration. *Kirsch Decl. ¶7.* To effectuate the investment, Mr. Joseph contracted with a New York entity set up by Abbott and Vita, Apelles VentureForth, SPV, LLC, which is also a nominal Respondent in the Arbitration. *Id.* Mr. Joseph himself admits his contractual relationship with these New York entities in his own declaration, referring to these entities as an affiliate of Columbia Care which is also a New York entity and Respondent in the Arbitration. *Id.* Later, Mr. Joseph entered into another contract for sale with New York entity Apelles VentureForth, LLC for his remaining equity in VentureForth. *Id. ¶8.*

The Arbitration hearing is set for February 1-12, 2021. The Arbitrator has indicated that because of the current COVID-19 pandemic, the hearing will be held remotely via Zoom. All hearings to date have been held remotely via Zoom or teleconference. *Kirsch Decl. ¶9.*

The February 1st hearing date had been in flux at the time the subpoenas were served on Messrs. Joseph and Gabriel. There could not have been a date certain included on the subpoenas that would have been accurate. In any event, the subpoenas contained the professional courtesy language of a "mutually convenient date and time" in order to accommodate the witnesses. *Id. ¶10.*

Petitioner's counsel attempted to reach out to counsel for each of Mr. Gabriel and Mr. Joseph on multiple occasions in part to discuss whether a mutually convenient date and time or process could be discussed. In the case of both Respondents' counsel, calls and e-mails were unreturned except to indicate that they believed the subpoenas were defective and unenforceable and that they did not intend to communicate with Petitioner further. *Id. ¶11.*

**ARGUMENT**

When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the petitioner need only make a prima facie showing of jurisdiction. *See Allianz Glob. Investors GmbH v Bank of Am. Corp.*, 457 F.Supp.3d 401, 407 (S.D.N.Y. 2020). The Court must construe the pleadings and affidavits in the light most favorable to petitioner, resolving all doubts in their favor. *Id.* "A prima facie showing suffices, *notwithstanding any controverting presentation by the moving party*, to defeat the motion." *Id.* (Emphasis in original).

I. **This Court is the proper and only court available to Petitioner to seek enforcement of the subpoenas.**

Section 7 of the Federal Arbitration provides, in part:

> "…Said summons shall issue in the name of the arbitrator or arbitrators, or a majority of them, and shall be signed by the arbitrators, or a majority of them, and shall be directed to the said person and shall be served in the same manner as subpoenas to appear and testify before the court; if any person or persons so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person or persons before said arbitrator or arbitrators, or punish said person or persons for contempt in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States."

*9 USC §7.* Accordingly, the Southern District of New York is the proper – and only -- court to petition to compel compliance with the valid arbitral subpoenas served upon Respondents Joseph and Gabriel. *Odjfell ASA v. Celanese AG,* 328 F.Supp.2d 505 (S.D.N.Y. 2004) (Rakoff, J.).

It is well accepted that reference to summonses that "shall be served in the same manner as subpoenas to appear and testify before the court" imports by reference Rule 45 of the Federal Rules of Civil Procedure ("FRCP") for the service of subpoenas. *See Life Receivables Trust v. Syndicate 102 at Lloyd's of London*, 549 F.3d 210 (2d Cir. 2008). Since 2013, FRCP Rule 45 provides that a "subpoena may be served at any place within the United States." *Fed.R.Civ. P. 45(b)(2).* Accordingly, there is a presumption that Congress understood the importance of third-

4

party testimony and evidence from throughout the nation for the full and fair resolution of disputes. And Congress has provided a mechanism for litigants to obtain that evidence. The courts must seek to give effect to the intent of Congress. *See Mizrahi v. Gonzales,* 492 F.3d 156, 158 (2d Cir. 2007) ("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress"). Conversely, were this Court to decline to exercise jurisdiction, there would be no court where Petitioner could seek to compel enforcement of the subpoenas since Section 7 of the FAA confers jurisdiction only on the federal district court sitting in the district where the arbitration is to be held. The statutes must not be interpreted to leave Petitioner with no avenue to compel compliance with the Subponeas.

**II.     This Court Has Personal Jurisdiction over the Respondents.**

To exercise personal jurisdiction to enforce the Subpoenas, three requirements must be met: 1) the service of process upon respondents was procedurally proper; 2) there must be a statutory basis for personal jurisdiction; and 3) the exercise of personal jurisdiction must comport with constitutional due process principles. *See, e.g., Waldman v. Palestine Liberation Organization*, 835 F.3d 317, 327 (2d Cir. 2016). All of these criteria have been met.

The Petition sets forth the service of the Subpoenas on each of the Respondents, and the service of the Petition has been properly made on both Respondents.[2] Both Respondents satisfy the requirements of CPLR §301, New York's long-arm jurisdiction statute, in that their ties to New York arise out of their roles in the underlying facts and circumstances and their involvement with New York entities who are parties to the Arbitration. Indeed, they have both signed the arbitration agreements governing the Arbitration, which alone may be dispositive in finding jurisdiction as

---

[2] Petitioner has made out a prima facie case that proper service was made and Mr. Gabriel's new contradictory assertions -- that he is now withdrawing his previous verbal agreement to accept service of the Subpoena and/or or that the affidavit of service of the Summons in this matter, are insufficient on a motion to dismiss. *See, Allianz,* supra, 457 F.Supp.3d at 407.

they have effectively submitted to the process of the Arbitration. *See Life Receivables Trust*, supra, 549 F.3d at 218 ("an arbitrator's power over parties stems from the arbitration agreement, not Section 7").

*Jeremy Joseph*. Mr. Joseph sought, negotiated, and obtained a considerable capital investment into his company VentureForth from New York persons (Abbott and Vita and their New York investment vehicle, Apelles VentureForth, LLC ("AVF")). He ultimately sold the entirety of his holdings to AVF. Mr. Joseph is a signatory to one of the arbitration agreements. It is this very investment by Abbott and Vita in VentureForth and the relationship to Columbia Care that is the subject of the subpoena served on Mr. Joseph. This articulable nexus between Mr. Joseph's transaction occurring within the state and the cause of action sued upon in the Arbitration supports a finding of personal jurisdiction under CPLR §302(a)(1). *See, e.g., Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 23 (2d Cir. 2004) (citation omitted); *see also Quest Trading, LLC v. Commerce & Industry Insurance Company*, 2017 WL 946421 (S.D.N.Y. Feb. 15, 2017) (holding that proof of one transaction in New York is sufficient to invoke personal jurisdiction pursuant to CPLR §302(a)(1), even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted.)

The assertion of personal jurisdiction over Mr. Joseph comports with due process, especially as he is a non-party not subject to liability in the Arbitration and is only being asked to provide documents and testimony. *See First American Corp. v. Price Waterhouse LLP*, 154 F.3d 16 (2d Cir. 1998). In *First American*, the Second Circuit acknowledged that "a person who is subjected to *liability* by service of process far from home may have better cause to complain of an outrage to fair play than one similarly situated who is merely called upon to supply documents or

testimony." *Id.* at 20 (Emphasis in original).  In addition, as was the case in *First American*, Mr. Joseph, as a founder, CEO and controlling shareholder of VentureForth, has unique access to documents that may be critical in unraveling the breaches of fiduciary duties and contract raised in the Arbitration.  Mr. Joseph clearly knew that, in light of his involvement and seeking and receiving a $2 million investment from New York entities, he risked exposure to personal jurisdiction in New York arising therefrom.  Accordingly, Mr. Joseph cannot be heard to complain that due process is not satisfied here.

*Sean Gabriel.* Mr. Gabriel also has strong and continuous ties to the investments, companies and relationships that underlie the Arbitration.  His status as founder of both companies here at issue place him at the center of the allegations and in a position to have presided over the alleged misappropriation and self-dealing of Abbott and Vita.   He is a party to both governing arbitration agreements. Indeed, he *could* have been named as a party to the Arbitration and *would* have been subject to all hearings and document productions in New York as a party. It defies common sense to conclude that he cannot be asked to provide testimony or documents in the hearing on a less onerous basis.

In addition, for the same reasons described above with respect to Mr. Joseph, in light of Mr. Gabriel's involvement in the matters in the Arbitration, Mr. Gabriel cannot be heard to complain that due process is not satisfied here.

### III.     The "100 Mile Rule" is not a Rule of Jurisdiction.

Respondents also urge the Court to dismiss the Petition on the ground that because the subpoenas seek testimony at a mutually acceptably date and time, and also seek delivery of documents to an office in New York, compliance cannot be compelled.

As a threshold matter, this is not an issue of jurisdiction. FRCP Rule 45(b) provides for nationwide service of subpoenas, which is relevant to jurisdiction, and such service was made in accordance with the rule. The so-called 100-mile rule of Rule 45(c) designates the place of compliance and is a rule of convenience. *Rule 45(c)(1)(A); MOORE'S* § 45.25[1], at 45-54 ("[P]lace of service is not relevant to place of compliance"). These issues should not be conflated, as Respondents urge.[3]

As a professional courtesy, both subpoenas specifically requested appearance at a "mutually convenient time and place" and, as Respondents' counsel know well, Petitioner indicated that accommodations would be made for the witnesses, including even convening a hearing within 100 miles of the Respondents' homes if need be. Both subpoenas call for documents to be produced in New York assuming that, consistent in accordance with widespread practice acknowledged by the courts, electronic delivery would be more convenient for the witnesses than appearance at a live hearing. *See, e.g., Hay Group, Inc. v. E.B.S. Acquisition Corp.,* 360 F.3d 404 (3d Cir. 2004) (Chertoff, J. concurring). These time and place statements, even if they were truly unacceptable to the Respondents, do not render the subpoenas defective. Nor did either Respondent timely object or move to quash or modify. *See Rule 45(d)(3)(A).* And even if they had, "modification is generally preferred over quashing of a subpoena." MOORE'S § 45.50[5], at 45-77; *Yukos Capital S.A.R.L. v. Feldman,* 2016 WL 3181151 (S.D.N.Y. June 3, 2016) (declining to quash and instead modifying place of compliance and enforcing Rule 45 Subpoena). Notably, Section 7 of the Federal Arbitration Act mandates that a motion to quash or modify must be made *in this Court*.

---

[3] Mr. Gabriel argues that because no specific time or place was indicated on his subpoena, there is nothing for this Court to "compel" and the Petition should be dismissed. This is wrong as a matter of law. However, if Mr. Gabriel is agreeing to appear and produce documents at a date and time certain, Petitioner would agree that the Petition is superfluous.

8

Petitioner also respectfully submits that the current pandemic is relevant to the interpretation of FRCP Rule 45 and that Messrs. Gabriel and Joseph should be compelled to appear by *videoconference* at an evidentiary hearing to provide testimony and produce documents. We are aware of case law in the Second Circuit holding that 9 U.S.C. §7 requires an in-person hearing and that a videoconference will not do. *Life Receivables Trust*, supra, 549 F.3d at 218 ("[A]rbitrators may, consistent with section 7, order 'any person' to produce documents so long as that person is called as a witness at a hearing."); *Odjfell,* supra, 328 F. Supp. 2d at 507.

However, such case law makes no sense in the current global pandemic in which nearly no business is conducted in person. *See, e.g. Agudath Israel of America v. Cuomo*, 980 F.3d 222 (2d Cir. 2020) (acknowledging executive orders that restricted in-person activities such as gatherings, businesses, school, and restaurants). *See, also,* November 30, 2020, Standing Order of Chief Judge of the Southern District of New York, Case 1:20-mc-00622-CM, suspending all in person operations of the Court until January 15, 2021 as "required to preserve public health and safety in light of the recent spike in coronavirus cases both nationally and within the Southern District of New York." Specifically, there is no possibility of attending any Arbitration hearing in person, including the February 1st final hearing because all hearings will be conducted remotely by videoconference. Petitioner should not be prejudiced and deprived of this testimony and documents because of the means of doing business have changed during a global pandemic. Moreover, it is also not at all clear how long the pandemic, or its aftermath, will require video-conferencing options to be made available to all persons. Indeed, it is a distinct possibility that the way in which we do business – and legal proceedings take place – are forever changed. As such, the above cited cases could well be impractical indefinitely.

## IV.     The Remaining Arguments Have No Merit

Mr. Joseph advances two further meritless arguments. First, he invites this Court to decline to hear the current Petition on the ground that it involves a medical marijuana company and marijuana is a federally unlawful substance. As a factual matter, this Petition involves compliance with subpoenas issued pursuant to the Federal Arbitration Act and the underlying Arbitration primarily involves breaches by Messrs. Abbott and Vita of fiduciary and contractual duties to Petitioner and others. As a legal matter, there is no precedent (or logic) for a federal court to decline to hear cases that may tangentially involve medical marijuana; indeed the federal courts hear such cases routinesly.  *See, e.g., High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1175 (10th Cir. 2019) (denying motion to quash subpoenas issued by IRS which sought to implement federal tax code provisions related to marijuana business). While it is true that a federal court may decline to enforce a contract that may be void as against public policy or illegal, *Ricatto v. M3 Innovations Unlimited, Inc.*, 2019 U.S. Dist. LEXIS 210777, (S.D.N.Y. Dec. 6, 2019), the court would still need to hear the case to make that determination.

Mr. Joseph also invites the Court to dismiss the case because Petitioner has been allegedly delinquent in discovery. Petitioner has in fact been anything but delinquent in discovery, but that is beside the point since this is not a discovery subpoena. Moreover, any issues regarding Petitioner's alleged delinquency should be raised at the Arbitration.

## CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that this Court deny the motions to dismiss for lack of personal jurisdiction and proceed to issuing an order compelling the Respondents Gabriel and Joseph to comply with the Subpoenas, as modified to provide that the witnesses may appear via videoconference in light of the global pandemic. In the alternative,

should the Court not exercise personal jurisdiction over the Respondents, because this Court is the only court to which Petitioner may apply for an order to compel compliance under the Federal Arbitration Act, Petitioner requests the opportunity to request this Court to issue letters rogatory or otherwise make request of federal district courts in which districts the respondents reside, to order compliance with the Subpoenas.

**KIRSCH & NIEHAUS PLLC**

/s/ Emily Bab Kirsch

**Emily Bab Kirsch**
150 East 58th Street, 22nd Floor
New York, NY 10155
**O:** 212-832-0170
**M:** 917-744-2888
Emily.kirsch@kirschniehaus.com