UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
STAFFORD BROUMAND, M.D.,          :
                                  :      20-cv-9137 (JSR)
                                  :
     Petitioner,                  :
                                  :      OPINION  AND ORDER
          -v-                     :
                                  :
JEREMY JOSEPH, PATRICIA HAWKINS,  :
SEAN GABRIEL, LEIGH SLAUGHTER, and :
JENNIFER A. GREENHALL,            :
                                  :
     Respondents.                 :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

     Petitioner Stafford Broumand is a party to an ongoing
arbitration in New York. The arbitrator in that dispute issued
subpoenas directing respondents Jeremy Joseph and Sean Gabriel,
residents of California and Virginia, respectively, to appear at
an evidentiary hearing in New York City and provide testimony and
documents. The arbitrator thereafter ruled that the arbitration
hearing would proceed by videoconference and begin on February 1,
2021.

     When respondents chose to ignore the subpoenas, petitioner
filed the instant petition, pursuant to Section 7 of the Federal
Arbitration Act (the "FAA"), 9 U.S.C. § 7, to compel compliance.
Gabriel and Joseph moved to dismiss the petition on the grounds
that this Court lacked personal jurisdiction and that the subpoenas

were otherwise invalid. By bottom-line Order dated January 28, 2021, the Court granted the motions to dismiss the petition. Dkt. No. 44. This Opinion and Order explains the reasons for that decision and directs the closing the case.

## Background

This proceeding arises from an arbitration between petitioner and certain individuals and entities before the American Arbitration Association titled <u>In the Matter of the Arbitration Between Stafford Broumand, M.D., and Michael Abbott, et al.,</u> AAA Case No. 01-19-0003-3836. Petition to Compel Compliance with Arbitrator's Subpoena ("Pet."), Dkt. No. 1, ¶ 10. In the underlying arbitration, petitioner alleges, among other things, that Michael Abbott and Nicholas Vita misdirected the assets of an entity in which petitioner maintained an interest, namely, VentureForth Holdings LLC ("VentureForth"), to another entity entirely controlled by Abbott and Vita, namely, Columbia Care LCC ("Columbia Care"). Declaration of Emily Kirsch ("Kirsch Decl."), Dkt. No. 32, ¶ 2.

Respondent Jeremy Joseph was the founder, CEO, and controlling shareholder of a predecessor to VentureForth. Respondent Sean Gabriel is a high-level executive of VentureForth and is also credited as a founder of Columbia Care. <u>Id.</u> ¶¶ 4-7. Neither is a party to the underlying arbitration.

-2-

The arbitrator, sitting in the Southern District of New York, initially issued subpoenas pursuant to 9 U.S.C. § 7 compelling Joseph and Gabriel to appear at an evidentiary hearing at the offices of petitioner's counsel in New York City "at a mutually agreeable time" and required them to bring certain documents within their possession to the hearing. Id. ¶¶ 12, 18. Joseph resides in California; Gabriel resides in Virginia. Pet. ¶¶ 2, 4. Although the subpoenas did not initially set a firm date for the evidentiary hearing, the arbitration, as noted, was set to begin on February 1, 2021. Kirsch Decl. ¶ 9. The arbitrator also decided that all hearings would proceed via videoconference. Id.

Joseph and Gabriel refused to comply with the subpoenas. Pet. ¶¶ 14, 20. On October 30, 2020, petitioner filed the instant petition to compel their compliance. Dkt. No. 1. In turn, Gabriel and Joseph moved to dismiss the petition pursuant to Federal Rule of Civil Procedure 12(b)(2) on the ground that this Court lacks personal jurisdiction and pursuant to Rule 12(b)(6) on the ground that the subpoenas are otherwise invalid. Dkt. Nos. 22 & 27. After reviewing the submissions, the Court ordered supplemental briefing to address certain questions central to the resolution of these motions, See Dkt. No. 33, and heard oral argument on January 27, 2021. Because the arbitration was slated to begin on February 1, 2021, the Court, after careful review, issued a "bottom-line" Order

on January 28, 2021 granting the motions to dismiss the petition.

## Discussion

I.   Personal Jurisdiction

"A district court . . . must have personal jurisdiction over a nonparty to compel it to comply with a valid discovery request under Federal Rule of Civil Procedure 45." Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 141 (2d Cir. 2014);[1] see also First Am. Corp. v. Price Waterhouse LLP, 154 F.3d 16, 20 (2d Cir. 1998) (assuming that enforcement of subpoena must "comport with due process" and the "assertion of personal jurisdiction").[2]

Where, as here, "a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing of jurisdiction." Allianz Global Investors GmbH v. Bank of America Corporation, 457 F. Supp. 3d 401, 407 (S.D.N.Y. 2020). If, after "constru[ing] the pleadings and affidavits in the light most favorable to plaintiffs [and] resolving all doubts in their favor," the Court finds a prima facie showing of jurisdiction, no "controverting presentation by the moving party [will] defeat the

---

[1]   As discussed below, Section 7 of the FAA incorporates certain elements of Federal Rule of Civil Procedure 45.

[2]   Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

motion." Id. A prima facie showing of personal jurisdiction requires: (1) procedurally proper service of process, (2) "a statutory basis for personal jurisdiction that renders such service of process effective" and (3) that "the exercise of personal jurisdiction . . . comport with constitutional due process principles." Waldman v. Palestine Liberation Org., 835 F.3d 317, 327 (2d Cir. 2016).

A. Service of Process

Only Gabriel disputes whether service of the arbitral subpoena was procedurally proper. The petition states that the arbitrator issued the subpoena on October 7, 2020. Pet. ¶ 18. Petitioner alleges that Gabriel agreed by telephone to accept service of the subpoena. Id. ¶ 19. In a sworn affidavit, however, Gabriel explains that petitioner's counsel called him on October 8, 2020 and asked whether she could send a copy of the arbitration subpoena by email. Affidavit of Sean Gabriel ("Gabriel Aff."), Dkt. No. 27-1, ¶ 7. Gabriel, who was then unrepresented, agreed, and petitioner's counsel emailed a copy of the subpoena that same day. Id. Having since retained counsel, Gabriel now contends that he "told her she could send me a copy of the subpoena by e-mail" but "never told her that I accepted service of the subpoena." Id. Notwithstanding Gabriel's controverting evidence, however, the

Court holds that petitioner has made out a prima facie case of proper service of process.[3]

B. Statutory Basis

"A federal statute or the law of the state in which the court is located can provide the statutory basis for personal jurisdiction." Gucci America, Inc. v. Weixing Li, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015). "The available statutory bases in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012).

Initially, petitioner relied solely upon Rule 4(k)(1)(A), which provides that "[s]erving a summons . . . establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." On this theory, the Court must look to New York's long-arm statute to determine whether it can assert personal jurisdiction over respondents. However, following supplemental briefing on the issue, petitioner also invoked Rule

---

[3]   Although the parties do not address it, there are two potentially relevant "services of process": (1) service of the arbitral subpoena; and (2) service of process of this enforcement action. The parties assume that only the former is relevant to the question whether this Court has personal jurisdiction over the respondents. Because both parties assume that only the former is relevant, the Court will proceed on that assumption.

4(k)(1)(C), which states that service of process establishes personal jurisdiction over a defendant "when authorized by federal statute." The Court analyzes these potential statutory bases in turn.

### 1. Rule 4(k)(1)(A) -- New York's Long-Arm Statute

Petitioner asserts that respondents are subject to this Court's "general" personal jurisdiction under CPLR § 301 and "specific" personal jurisdiction under CPLR § 302(a)(1).

#### a. General Jurisdiction

Under CPLR § 301, a court has general personal jurisdiction over an individual if his conduct with New York is "so 'continuous and systematic' as to render [it] essentially at home in the forum state." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "To determine whether a defendant does business in the state, the Court must be able to say from the facts that the defendant is present in the State not occasionally or casually, but with a fair measure of permanence and continuity." Wallace Church & Co. Inc. v. Wyattzier, LLC, No. 20-cv-1914 (CM), 2020 WL 4369850, at *4 (S.D.N.Y. Jul. 30, 2020). "An individual defendant 'cannot be subject to jurisdiction under CPLR § 301 unless he is doing business in New York as an individual rather than on behalf of a corporation.'" Id. at *5 (quoting Brinkmann v. Adrian Carriers, Inc., 815 N.Y.S.2d 196, 199 (2d Dep't 2006)).

Petitioner contends that both respondents satisfy the requirements of CPLR § 301 because "their ties to New York arise out of their roles in the underlying facts and circumstances and their involvement with New York entities who are parties to the Arbitration." Petitioner's Memorandum of Law in Opposition to Respondents' Motions to Dismiss for Lack of Personal Jurisdiction ("Pet. Mem."), Dkt. No. 30, at 5. Moreover, petitioner suggests that "they have both signed the arbitration agreements governing the Arbitration, which alone may be dispositive in finding jurisdiction as they have effectively submitted to the process of the Arbitration." Id.

The Court disagrees and holds that neither respondent is subject to general personal jurisdiction in New York. Their relationship to New York entities does not render them "at home" in New York. Moreover, the only arbitration agreement that the respondents appear to have signed is an agreement to arbitrate certain disputes in Washington D.C. See Dkt. 32-2, § 12.8.

b. Specific Jurisdiction

CPLR § 302 provides New York courts with a second path to specific personal jurisdiction over nonresident defendants. "To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state; and (2) the claim asserted must arise

from that business activity." <u>Eades v. Kennedy, PC Law Offices</u>, 799 F.3d 161, 168 (2d Cir. 2015). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." <u>Id.</u> The Second Circuit has established four factors for courts to consider in determining the applicability of Section 302(a)(1):

> (1) whether the defendant has an ongoing contractual relationship with a New York corporation; (2) whether the contract was negotiated or executed in New York and whether the defendant visited New York to meet with the parties after the contract was executed; (3) whether there is a choice-of-law clause in the contract; and (4) whether the contract requires the defendant to send notices and payments into the forum state.

<u>Agency Rent A Car System, Inc. v. Grand Rent A Car Corp.</u>, 98 F.3d 25, 29 (2d Cir. 1996).

Petitioner argues that respondents are subject to specific jurisdiction in New York because of their respective relationships with the New York entities that are parties to the arbitration. For example, petitioner points to the fact that Joseph "sought, negotiated, and obtained a considerable capital investment into his company . . . from New York persons." Pet. Mem. at 6. Likewise, he maintains that Gabriel "has strong and continuous ties to the investments, companies and relationships that underlie the

Arbitration." Pet. Mem. at 7. Also, petitioner contends that because Joseph "could have been named as a party to the Arbitration and would have been subject to all hearings and document productions in New York as a party . . . , [i]t defies common sense to conclude that he cannot be asked to provide testimony or documents in the hearing on a less onerous basis." Id.

The Court again disagrees and holds that neither respondent is subject to specific jurisdiction in New York under the state's long-arm statute. At most, petitioner shows that one of the four factors -- an ongoing contractual relationship with a New York corporation -- cuts in favor of personal jurisdiction. But there are no allegations that any contracts were negotiated or executed in New York, and respondents have each sworn that they have never visited New York in connection with these businesses. See Gabriel Aff. ¶¶ 5-6; Declaration of Jeremy Joseph in Opposition to Petition to Compel Compliance with Arbitrator's Subpoena ("Joseph Decl."), Dkt. No. 22-9, ¶¶ 3-6. The other factors, too, cut against a finding of personal jurisdiction, since there is no evidence that respondents have signed any contract with a New York choice-of-law clause or that any contract requires respondents to send any payments or notices into New York.

Accordingly, the Court holds that petitioner has failed to establish a prima facie case that the Court could exercise personal jurisdiction over respondents under Rule 4(k)(1)(A).

2. Rule 4(k)(1)(C) -- The Federal Arbitration Act

Separate and apart from the state's long-arm statute, a federal court can exercise personal jurisdiction over a party where a federal statute so permits. See Fed. R. Civ. P. 4(k)(1)(C). The parties dispute whether the FAA provides an independent statutory basis for the Court to exercise personal jurisdiction over respondents. Given that respondents are located out-of-state, the dispositive question is whether Section 7 of the FAA permits nationwide service of process.

Section 7 of the FAA provides that arbitral summons "shall be served in the same manner as subpoenas to appear and testify before the court." Accordingly, as the Second Circuit has recognized, it incorporates by reference Federal Rule of Civil Procedure 45(b)(2), which governs the service and enforcement of subpoenas to appear before the federal courts. See Dynegy Midstream Services, LP v. Trammochem, 451 F.3d 89, 94 (2d Cir. 2006). When Trammochem was decided in 2006, Rule 45(b)(2) limited out-of-district service of

subpoenas to 100 miles of the place of compliance. See id.[4] Thus, the Second Circuit held that Section 7 does not permit nationwide service of process. Id. at 96. But in 2013, Rule 45(b)(2) was amended to permit service of a subpoena at "any place within the United States." The question, then, is whether Section 7's reference to the manner of service of court-issued subpoenas incorporates Rule 45(b)(2) as it existed at the time Section 7 was passed (the so-called "static" approach") or as it exists today (the so-called "dynamic" approach). Cf. Jam v. Int'l Finance Corp., 139 S. Ct. 759, 773 (Breyer, J., dissenting) (describing these two approaches). Under the dynamic approach, Section 7 of the FAA would allow for nationwide service of arbitral subpoenas and thereby provide the Court with an independent statutory basis to exercise personal jurisdiction over respondents.

The Eleventh Circuit recently adopted the dynamic approach. It explained that when a statute "refers to a general subject, the statute adopts the law on that subject as it exists whenever a

_____

[4]    The version of Rule 45(b)(2) then in effect limited service to "any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the deposition, hearing, trial, production, or inspection specified in the subpoena or at any place within the state where a state statute or rule of court permits service of a subpoena issued by a state court of general jurisdiction sitting in the place of the deposition, hearing, trial, production, or inspection specified in the subpoena." Trammochem, 451 F.3d at 94-95 (quoting version of Fed. R. Civ. P. 45(b)(2) then in effect).

question under the statute arises." Managed Care Advisory Group, LLC
v. CIGNA Healthcare, Inc., 939 F.3d 1145, 1157 (11th Cir. 2019) (per
curiam) (quoting Jam, 139 S. Ct. at 769). Conversely, when a "statute
refers to another statute by specific title or section number[, it]
in effect cuts and pastes the referenced statute as it existed when
the referring statute was enacted, without any subsequent
amendments." Id. (quoting Jam, 139 S. Ct. at 769). The Eleventh
Circuit concluded that "[b]ecause Section 7 of the FAA contains a
general reference to Rule 45 by requiring subpoenas to be 'served
in the same manner as subpoenas to appear and testify before the
court,' it incorporates subsequent changes to Rule 45, including the
2013 amendment permitting nationwide service." Id.

In their supplemental briefing, respondents contend that
Managed Care was wrongly decided because it failed to distinguish
between subsequent legislative action and subsequent rule changes.
Respondents maintain that a non-legislative amendment to the Federal
Rules of Civil Procedure, which are not passed by Congress but
promulgated by the Supreme Court, cannot amend a federal statute.
See Respondent Sean Gabriel's Response to the Court's January 7,
2021 Order ("Gabriel Supp. Mem."), Dkt. No. 39, at 5. They contend
that if "the Managed Care decision were correct, it would mean that
(i) Congress enacted Section 7 without intending to provide for
nationwide service of process . . . but (ii) a non-substantive, non-

-13-

legislative amendment to procedural rules somehow inverted that congressional will more than fifty years later." Id. Respondents also cite to a recent Second Circuit case that stated in dicta that "Section 7 does not permit nationwide service of process." Washington National Insurance Company v. OBEX Group LLC, 958 F.3d 126, 140 (2d Cir. 2020). OBEX post-dated the 2013 amendments to the Federal Rules of Civil Procedure, although it relied for this proposition on Trammochem, which, as discussed, pre-dated the rule changes.

The Court agrees with the Eleventh Circuit's decision in Managed Care and holds that Section 7 of the FAA now permits nationwide service of process. Its general reference to Rule 45(b)(2) incorporates subsequent changes to that rule. Respondents' proposed distinction -- between legislative statutes and non-legislative rules -- is unpersuasive. In Jam, the Supreme Court held that "a general reference to federal discovery rules incorporates those rules as they are found on any given day, today included." 139 S. Ct. at 769. It took no issue with the fact that federal discovery rules -- just like federal service of process -- are governed not by legislative action but by non-legislative rule. Nor does this approach frustrate congressional intent; to the contrary, it helps to fulfil it. If Congress had intended to forever preclude nationwide service of arbitral subpoenas, it could have used static language to that effect. Instead, Congress generally linked the method of

service for arbitral subpoenas to the method of service of court-issued subpoenas. One must presume that, in doing so, Congress anticipated that the method of service of court-issued subpoenas might change, and that any such change would be incorporated into Section 7 of the FAA. Finally, the OBEX dicta is just that -- dicta. That case did not present the question whether Section 7 permitted nationwide service of process, and it does not control the question before this Court.

Because Section 7 of the FAA allows for nationwide service of process, the Court holds that it provides a statutory basis for personal jurisdiction over respondents.

C. Due Process

Before exercising personal jurisdiction over the respondents, however, the Court must determine whether doing so would comport with due process. This determination calls for a two-step test: first, the Court must determine whether the respondents have "sufficient 'minimum contacts' with the forum, and second, [the Court] must find that the exercise of jurisdiction under the circumstances [would be] 'reasonable.'" Gucci, 135 F. Supp. 3d at 96.

1. Minimum Contacts

"Court often analyze the 'minimum contacts' inquiry as two separate prongs: (1) the 'purposeful availment' prong, whereby the

court determines whether the entity deliberately directed its conduct at the forum, and (2) the 'relatedness' prong, whereby the court determines whether the controversy at issue arose out of or related to the entity's in-forum conduct." Id. at 97. Where, as here, a court seeks to assert personal jurisdiction over a nonparty, due process demands that "the nonparty's contacts with the forum go to the actual discovery sought rather than the underlying cause of action." In re del Valle Ruiz, 939 F.3d 520, 529 (2d Cir. 2019).

As a threshold matter, the Court must determine whether the relevant forum is the State of New York or the United States. The Second Circuit has left open the question -- answered in the affirmative by other courts of appeals -- whether "when a civil case arises under federal law and a federal statute authorizes nationwide service of process, the relevant contacts for determining personal jurisdiction are contacts with the United States as a whole." Gucci, 768 F.3d at 142 n.21. However, as Judge Buchwald has observed, the "weight of authority [is] that the national contacts approach is both sound and consistent with this Circuit's law." In re Libor-Based Financial Instruments Antitrust Litigation, No. 11-MDL-2262 (NRB), 2015 WL 4634541, at *18 (S.D.N.Y. Aug. 4, 2015) (collecting cases). The rationale underlying this "national contacts" approach is that "[w]hen the

-16-

national sovereign is applying national law, the relevant contacts are the contacts between the defendant and the sovereign's nation." See Chew v. Dietrich, 143 F.3d 24, 29 n.4 (2d Cir. 1998) (quoting In re Oil Spill by Amoco Cadiz Off Coast of Fr. on Mar. 16, 1978, 954 F.2d 1279, 1294 (7th Cir. 1992) (per curiam)).

There is, however, a wrinkle to the application of the national contacts approach in this case. The above-cited cases seem to suggest that national contacts are relevant where a federal statute authorizes nationwide service of process and the case arises under federal law. The FAA, however, "is something of an anomaly in the realm of federal legislation: It bestows no federal jurisdiction but rather requires for access to a federal forum an independent jurisdictional basis over the parties' dispute." OBEX, 958 F.3d at 133. As a result, even though, as discussed, Section 7 of the FAA authorizes nationwide service of process, the instant enforcement action technically arises under diversity jurisdiction, not under federal question jurisdiction. See Pet. ¶ 8 (invoking diversity jurisdiction).

Respondents argue that because this case arises under diversity jurisdiction, the national contacts approach is inapposite. But they do not address the anomaly that is the FAA. Petitioner, by contrast, maintains that "once the court obtains jurisdiction over the dispute there is no basis to distinguish between the remedies available

depending on the basis for jurisdiction." Petitioner's Opening Supplemental Memorandum of Law in Opposition to Respondents' Motions to Dismiss for Lack of Personal Jurisdiction ("Pet. Supp."), Dkt. No. 37, at 3; see also id. ("[T]here is no interplay between the bases for subject matter jurisdiction and the various remedies available under the FAA.").

The Court agrees with petitioner and holds that in a proceeding to enforce an arbitral subpoena pursuant to Section 7 of the FAA, the relevant contacts for determining personal jurisdiction are contacts with anywhere in the United States, even where, as here, the case arises not under federal question but diversity jurisdiction. The FAA "creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, [even though] it does not create any independent federal-question jurisdiction . . . ." Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 n.32 (1983). Although this "anomaly" might serve to leave "enforcement of the Act . . . in large part to the state courts," the FAA "nevertheless represents federal policy to be vindicated by the federal courts where otherwise appropriate." Id. When a federal court enforces arbitral subpoenas under Section 7 of the FAA, then, it is applying national law and vindicating federal policy -- even if the case made its way to federal court through diversity jurisdiction. Because the national

contacts approach is applicable, the Court easily finds that respondents, who live in the United States, have sufficient minimum contacts with the country to support personal jurisdiction.

2. Reasonableness

At the second stage of the due process analysis, the party challenging jurisdiction must make "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 129 (2d Cir. 2002) (Sotomayor, J.). In determining whether the exercise of personal jurisdiction would comport with "traditional notions of fair play and substantial justice," courts generally consider five factors: (1) "the burden that the exercise of jurisdiction will impose on the [entity]," (2) "the interests of the forum state in adjudicating the case," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of the controversy," and (5) "the shared interest of the states in furthering substantive social policies." Id.

The Supreme Court has not addressed how the reasonableness prong should be applied when considering personal jurisdiction over nonparties. See Ruiz, 939 F.3d at 529. The Second Circuit, for its part, has recognized two competing equitable interests.

"On the one hand, a 'person who is subjected to liability . . . far from home may have better cause to complain of an outrage to fair play' than a nonparty," who does not face the prospect of liability. Gucci, 768 F.3d at 137 n.17 (quoting Price Waterhouse, 154 F.3d at 20). "But on the other hand, a nonparty with few if any connections to the activities giving rise to the suit may have a strong interest in its freedom to take actions that are 'genuinely independent' of any intent to frustrate a court's injunction." Id. (quoting Heyman v. Kline, 444 F.2d 65, 65-66 (2d Cir. 1971)). Recognizing these two competing interests, the Second Circuit has rejected the idea that "that there is a categorically lower showing of due process needed to obtain discovery from a nonparty." Ruiz, 939 F.3d at 530.

Where, however, the national contacts approach is involved, the analysis is somewhat different. Many circuits that have adopted the national contacts approach effectively assume that a party's "minimum contacts" with the United States automatically satisfy due process. See, e.g., Busch v. Buchman, Buchman & O'Brien, Law Firm, 11 F.3d 1255, 1258 (5th Cir. 1994) ("Given that the relevant sovereign is the United States, it does not offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over a defendant residing within the United States."); Lisak v. Mercantiel Bancorp, Inc., 834 F.2d 668, 671

(7th Cir. 1987) ("[T]here is no constitutional obstacle to nationwide service of process in the federal courts in federal-question cases."). By contrast, the Eleventh Circuit approaches the issue "by weighing the burdens imposed on the summonsed parties against the federal interest," although it observes that "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." Managed Care, 939 F.3d at 1158.

Here, to determine whether exercise of jurisdiction would be reasonable, the Court must identify what burden it would impose on respondents. While the subpoenas themselves require respondents to testify in-person at an evidentiary hearing in New York, the arbitrator has since ruled that the arbitration will proceed remotely. Given that there will be no in-person evidentiary hearing, the subpoena functionally calls for an appearance at a remote hearing. Even if, as Joseph suggests, interstate travel during a pandemic is so unreasonable as to defeat an otherwise proper exercise of personal jurisdiction, the Court holds that it is not unreasonable to require respondents to appear by videoconference at an evidentiary hearing in New York. Therefore, the Court holds that respondents have failed to demonstrate that it would be unreasonable for the Court to exercise personal jurisdiction over them.

In sum, the Court holds that petitioner has made a prima facie showing of personal jurisdiction over respondents. Respondents' motions to dismiss the petition pursuant to Federal Rule of Civil Procedure 12(b)(2) are therefore denied.

II.   Enforcement of the Subpoena

That the Court has personal jurisdiction over respondents does not necessarily mean that the arbitral subpoenas are enforceable. Respondents contend that the petition should also be dismissed because the arbitral subpoenas violate (1) the 100-mile geographical limitation of Federal Rule of Civil Procedure 45(c); and (2) the presence requirement of Section 7 of the FAA. The Court agrees with respondents on both counts.[5]

A. The 100-Mile Geographical Limitation of Federal Rule of Civil Procedure 45(c)

As discussed, Section 7 of the FAA provides for the enforcement of arbitral subpoenas. It states that "if any person . . . so summoned to testify shall refuse or neglect to obey said summons, upon petition the United States district court

---

[5]   Respondents also argue that the Court should dismiss the petition for various other reasons including: (1) because the underlying arbitration stems from a dispute regarding a marijuana business that violates federal law, Joseph Mem. at 5; (2) because the subpoenas do not state on their face the time and place of compliance, Gabriel Mem. at 11-12; and (3) because petitioner has not pursued discovery with enough diligence, Joseph Mem. at 6-7. Since the Court dismisses the petition on alternative grounds, it does not reach these issues.

for the district in which such arbitrators, or a majority of them, are sitting may compel the attendance of such person . . . in the same manner provided by law for securing the attendance of witnesses . . . in the courts of the United States." Federal Rule of Civil Procedure 45(c), which governs the enforcement of subpoenas in federal court, states that "[a] subpoena may command a person to attend a trial, hearing, or deposition only," as relevant here, "within 100 miles of where the person resides, is employed, or regularly transacts business in person." In addition, Rule 45(d)(3)(A)(ii) states that the district court where compliance is required "must quash or modify a subpoena that . . . requires a person to comply beyond the geographical limits specified in Rule 45(c)." Thus, the 100-mile limitation, which was enforced in the pre-2013 Rule 45 through a limit on service, was carried over to the post-2013 Rule 45 through a limit on enforcement.

The Second Circuit has not addressed whether the geographical limits found in Rule 45(c) apply not only to subpoenas in civil litigation but also to arbitral subpoenas issued under Section 7 of the FAA. Nor has it addressed whether a district court has an obligation or the power under Rule 45(d)(3)(A)(ii) to quash or modify an arbitral subpoena that requires a person to comply beyond the geographical limits specified in Rule 45(c).

In Wash. Nat'l Ins. Co. v. OBEX Grp. LLC, 958 F.3d 126 (2d Cir. 2020), the panel affirmed a district court's decision not to rule on respondents' objections that the arbitral subpoenas were "unduly burdensome, overbroad, duplicative of prior arbitration summonses, and required disclosure of privileged or protected matter" in violation of Rule 45(d). Id. at 137. It rejected the respondents' argument that "Rule 45's obligations [applied to] district courts in proceedings to enforce arbitration summonses under section 7 of the FAA." Id. at 138. It reasoned that Section 7 merely:

> indicates that summonses are to be enforced in the same manner that a subpoena is to be enforced -- i.e., by compulsion or contempt. Rule 45 does not cover these processes. Instead, it covers subpoenas generally -- what they contain, how they are served, where they can require a person to go, and how a person must respond, among other things.

Id. Although the Second Circuit held that district courts need not rule on Rule 45(d) objections, it declined to determine "whether district courts have the power to" do so. Id. at 139.

Notwithstanding OBEX, respondents argue, and petitioner concedes, that Rule 45(c)'s geographic limits apply to arbitral subpoenas. See Petitioner's Reply Supplemental Memorandum of Law in Opposition to Respondents' Motions to Dismiss for Lack of Personal Jurisdiction ("Pet. Supp. Reply"), Dkt. No. 41, at 3. To get around OBEX, petitioner suggests that a district court faced

-24-

with an arbitral subpoena that requires compliance beyond the geographic limitations of Rule 45(c) could simply decline to enforce the subpoena, without technically quashing or modifying it pursuant to Rule 45(d)(3)(A)(ii). Pet. Supp. at 5. The Court agrees and adopts petitioner's reading of Rule 45(c).[6] Thus, if the subpoenas required respondents to testify at in-person evidentiary hearing in New York, they would clearly be unenforceable under Rule 45(c).

Petitioner maintains, however, that Rule 45(c)'s geographic limitations "are not implicated by the arbitral subpoenas in this matter" because they call for remote testimony and do not require respondents "to travel more than 100 miles, or indeed, at all." Pet. Supp. at 5-6. Respondents argue that petitioner should not be able to evade the geographic limitations of Rule 45(c) through the use of video testimony. Respondent Sean Gabriel's Reply to

---

[6]   The Court notes that there is also a colorable argument that the ruling in OBEX should not apply to objections under Rule 45(d)(3)(A)(ii). The Rule 45(d) objections at issue in OBEX implicated the merits of the underlying dispute, risked turning a district court into "full-bore legal and evidentiary appeals" body, and were therefore best left to the arbitrator. 958 F.3d at 138. The 100-mile limitation, by contrast, is straightforward; the arbitrator is no better positioned than is the Court to rule on it. Because, however, petitioner concedes that the Court could decline to enforce the subpoena under Rule 45(c), the Court declines to reach the question whether it has the power or authority to quash the subpoenas under Rule 45(d).

Petitioner's Response to the Court's January 7, 2021 Order ("Gabriel Supp. Reply"), Dkt. No. 42, at 6-7. In support, respondents cite to <u>Ping-Kuo Lin v. Horan Capital Mgmt. LLC</u>, No. 14-cv-5202, 2014 WL 3974585, at *1 (S.D.N.Y. Aug. 13, 2014), where Judge Stanton held that a respondent located more than 100 miles away from New York City could not be compelled to testify, even by videoconference, at an arbitration hearing in New York City. Judge Stanton reasoned that Federal Rule of Civil Procedure 43(a), which permits a district court in certain circumstances to allow "testimony in open court by contemporaneous transmission from a different location," "does not operate to extend the range or requirements of a subpoena." <u>Id.</u>

The Court agrees with Judge Stanton and holds that the arbitral subpoenas are unenforceable under Rule 45(c) because they would require respondents to "attend" an evidentiary hearing beyond 100 miles of where they are employed or regularly transact business in person. Petitioner recognizes that the "[a]rbitration is venued in New York, New York" and represents to the Court that both the "AAA Administrators and the Arbitrator have affirmed that the Arbitration is properly sited in New York." Pet. Mem. at 2 & n.1. Indeed, the reason petitioner brought this enforcement action in the Southern District of New York is because the arbitrator issued the subpoenas while sitting in this District. In the Court's

view, the site of the arbitration does not change simply because certain participants remotely access the proceedings from elsewhere.

To avoid Rule 45(c)'s geographical limitations, the Court would have to conclude that testimony via teleconference somehow "moves a trial to the physical location of the testifying person." Roundtree v. Chase Bank USA, N.A., No. 13-239 MJP, 2014 WL 2480259 (W.D. Wash. Jun. 3, 2014). Petitioner cites to some out-of-circuit district court cases that seem to take this approach. See In re Newbrook Shipping Corp., --- F. Supp. 3d ---, 2020 WL 6451939 (D. Md. 2020) ("Given the modification of the deposition notice to provide for a remote deposition over Zoom or other teleconferencing platform, the deposition notice no longer requires [respondents] to travel more than 100 miles (or at all) to comply, so the Court declines to address [the] argument that the subpoena compels [respondents] to comply outside of the geographical bounds of Rule 45(c)."); In re Xarelto (Rivaroxaban) Products Liability Litigation, 2017 WL 2311719 (E.D. La. May 26, 2017) (refusing to quash a subpoena that required respondent to testify by videoconference at trial that would occur more than 100 miles away on the ground that the respondent would "attend the trial . . . by remote transmission" at a place within 100 miles from where he

resided).[7] But the Court concludes that this approach is inconsistent with the text of Rule 45(c), which speaks, not of how far a person would have to travel, but simply the location of the proceeding at which a person would be required to attend. Moreover, any other reading would render Rule 45(c)'s geographical limitations a nullity and bestow upon any arbitrator sitting anywhere in the country the unbounded power to compel remote testimony from any person residing anywhere in the country.

Accordingly, the Court concludes that the arbitral subpoenas, even as modified to require video testimony, are unenforceable because they seek to compel respondents to "attend" an evidentiary hearing that is located outside the geographical limits set forth in Rule 45(c).

B. The Presence Requirement of Section 7 of the FAA

Even if Rule 45(c)'s geographical limitations did not invalidate these arbitral subpoenas, Section 7's presence

---

[7]    The other cases to which petitioner less persuasively cites concern the application of Rule 45(c)(2)'s geographical limits to electronic document production, not rule 45(c)(1)'s geographical limits to remote testimony. See, e.g., Mackey v. IDT Energy, Inc., No. 19 Misc. 29 (PAE), 2019 WL 2004280 (S.D.N.Y. May 7, 2019). Those decisions, however, "are based on language, currently found in Rule 45(d)(2)(A), which provides that '[a] person commanded to produce documents . . . need not appear in person at the place of production . . . unless also commanded to appear for a deposition, hearing, or trial.'"). See CresCom Bank v. Terry, 269 F. Supp. 3d 708, 713 (D.S.C. 2017). There is no analogous provision regarding testimony.

requirement would. Section 7 of the FAA states that "the arbitrators . . . may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." The Second Circuit -- like the Third, Ninth, and Eleventh Circuits -- has held that this language does not provide arbitrators with the authority to order nonparties to provide documents unless the nonparty "is called as a witness at a hearing. Life Receivables Tr. v. Syndicate 102 at Lloyd's of London, 549 F.3d 210, 218 (2d Cir. 2008).[8] This presence requirement forces "the party seeking the non-party discovery -- and the arbitrators authorizing it -- to consider whether production is truly necessary." Id. To that end, the Second

---

[8]    See also Hay Group, Inc. v. E.B.S. Acquisition Corp., 360 F.3d 404, 407 (3d Cir. 2004) (Alito, J.) ("Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time."); CVS Health Corp. v. Vividus, LLC, 878 F.3d 703, 708 (9th Cir. 2017) ("Given the clear statutory language, we reject the proposition that section 7 grants arbitrators implicit powers to order document discovery from third parties prior to a hearing."); Managed Care, 939 F.3d at 1160 ("[T]he plain language of the statute is unambiguous in requiring witnesses to appear before an arbitrator and bring any documents with them, thus prohibiting pre-hearing discovery from non-parties."). But see In re Security Life Ins. Co. of America, 228 F.3d 865, 870 (8th Cir. 2000) (holding that document discovery is available from non-parties under Section 7 of the FAA even without accompanying testimony).

Circuit has observed that arbitrators are less likely to abuse
their power to utilize preliminary hearings as a discovery device
to subpoena third-party witnesses gratuitously if "the arbitrators
themselves must attend any hearing at which such subpoenas are
returnable." Stolt-Nielsen SA v. Celanese AG, 430 F.3d 567, 580
(2d Cir. 2005).

The parties dispute whether the presence requirement is
satisfied where, as here, an arbitral subpoena compels a non-party
to appear not in-person but by videoconference at an evidentiary
hearing to provide testimony and produce documents. Petitioner
maintains that video testimony complies with the presence
requirement; respondents insist that it does not.

In its recent Managed Care opinion, the Eleventh Circuit held
that Section 7's presence requirement does not authorize district
courts to "enforce an arbitral summons for a witness to appear via
video conference." 939 F.3d at 1160. "Looking to dictionaries from
the time of Section 7's enactment" around 1925, the Eleventh
Circuit explained that a "court order compelling the 'attendance'
of a witness 'before' the arbitrator meant compelling the witness
to be in the physical presence of the arbitrator." Id. The Eleventh
Circuit also reasoned that electronically "providing the necessary
documents to the arbitrator and attorneys prior to the hearing
constitutes pre-hearing discovery that is not authorized by the

FAA." Id. And, although not squarely presented with the issue, the Third Circuit's articulation of the presence requirement also suggests an in-person element. See Hay Group, 360 F.3d at 407 ("Section 7's language unambiguously restricts an arbitrator's subpoena power to situations in which the non-party has been called to appear in the physical presence of the arbitrator and to hand over the documents at that time.") (emphasis added). That the Second Circuit quoted this language from Hay Group is another indicator that video testimony is not sufficient. See Life Receivables, 549 F.3d at 215 (quoting Hay Group, 360 F.3d at 407).

Other district courts, too, have reached similar results. See Dodson Int'l Parts, Inc. v. Williams Int'l Co., Inc., 2019 WL 5680811 (E.D. Mich. Jun. 26, 2019) (report and recommendation) ("[Petitioner's] assertion that testifying and transmitting documents by remote uplink is equivalent to appearing 'before the arbitrator' stretches that phrase past its breaking point. In no meaningful sense is a third-party in Connecticut 'before' an arbitrator in Michigan."); Westlake Vinyls, Inc. v. Cooke, 2018 WL 468993, at *4 (W.D. Ky Aug. 21, 2018) report and recommendation adopted by 2018 WL 5306665 (W.D. Ky Oct. 16, 2018) (explaining that permitting video testimony would be "contrary to Section 7's plain meaning that the arbitrator(s) must be physically present at the hearing").

In the face of this judicial consensus, petitioner gestures toward the extraordinary circumstances presented by the current pandemic. He maintains that, in light of the pandemic, "videoconferencing is now a necessity, not a convenience." Pet. Supp. at 9. Likewise, petitioner insists that a physical presence requirement, especially in these times, "would unnecessarily prejudice litigants to a remote-only hearing." Id. at 8.

However valid petitioner's policy concerns may arguably be, they cannot trump the plain meaning of Section 7 of the FAA. Moreover, allowing video testimony would undermine the purpose of the presence requirement. The principle, as discussed, is to force an arbitrator to think twice before issuing an arbitral subpoena. Allowing arbitrators to subpoena nonparties for discovery without requiring the arbitrators to convene and preside over a physical hearing would largely undermine that calculation.

Accordingly, the Court concludes that the arbitral subpoenas, as modified to require video testimony, are unenforceable because they seek to compel respondents to produce documents without also requiring respondents to testify in-person at an evidentiary hearing.

## Conclusion

For the foregoing reasons, the Court, by an Order dated January 28, 2021, granted the motions of respondents Joseph and

Gabriel to dismiss the petition. In particular, the Court holds that, although the Court has personal jurisdiction over respondents, the petition has failed to state a claim on which relief can be granted. The Clerk of the Court is therefore directed to close the case.

     SO ORDERED.

Dated:    New York, NY

          February 27, 2021

                                        JED S. RAKOFF, U.S.D.J.